**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
707 SW Washington St. Ste. 600
Portland, OR 97205
Tel: 503-228-6474
Fax: 503-228-2556
david@sugermandahab.com
nadia@sugermandahab.com

**Attorneys for Plaintiff Chandra B. Singh**

*[See Additional Counsel on Signature Page]*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| CHANDRA B. SINGH, individually and on behalf of all others similarly situated, | Case No. 3:21-cv-00190-AR |
| Plaintiff, | Class Action |
| v. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| STATE FARM LIFE INSURANCE COMPANY, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.     The requirements of Rule 23(a) are satisfied. ............................................................. 2

      A.     Policy interpretation and breach are common questions because State Farm's standardized Policy means the same thing, and State Farm performed it the same way, for all class members. ......................................................... 2

      B.     Plaintiff satisfies typicality and adequacy. ....................................................... 9

II.    State Farm's challenges to Rule 23(b)(3)'s predominance requirement fail. ............................ 11

      A.     Mr. Witt calculates the damages resulting to every class member under Plaintiff's interpretation of the Policy. ............................................................ 11

      B.     Every class member has standing to sue. ....................................................... 16

      C.     Common questions predominate Plaintiff's conversion claim. ..................................... 19

      D.     Common questions predominate State Farm's statute of limitations defense. .............. 20

III.   Rule 23(b)(2) is satisfied. ............................................................................... 23

CONCLUSION .......................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
 568 U.S. 455 (2013).................................................................................................... 9

*Andres v. American Standard Ins. Co.*,
 205 Or. App. 419 (2006)............................................................................................. 3

*Avritt v. Reliastar Life Ins. Co*,
 615 F. 3d 1023 (8th Cir. 2010) ........................................................................... 3, 4, 6

*Bally v. State Farm Life Ins. Co.*,
 No. 18-cv-04954-CRB, 2019 WL 3891149 (N.D. Cal. Aug. 19, 2019)...................... 4, 7, 22

*Bally v. State Farm Life Ins. Co.*,
 335 F.R.D. 288, 300 (N.D. Cal. 2020)................................................................. 10, 12, 18

*Bally v. State Farm Life Ins. Co.*,
 536 F. Supp. 3d 495 (N.D. Cal. 2021) ................................................................... 4, 21

*Bally v. State Farm Life Ins. Co.*,
 No. 18-cv-04954-CRB, 2022 WL 594798 (N.D. Cal. Feb. 24, 2022)................... 5, 13, 15, 16

*Bally v. State Farm Life Ins. Co.*,
 No. 18-cv-04954-CRB, 2022 WL 562714 (N.D. Cal. Feb. 24, 2022)....................... 4, 7, 17

*Cain Petroleum Inc. v. Zurich Am. Ins. Co.*,
 224 Or. App. 235 (2008)............................................................................................ 2

*Cruson v. Jackson Nat'l Life Ins. Co.*,
 954 F.3d 240 (5th Cir. 2020) ................................................................................... 19

*Emps. Ins. of Wausau v. Tektronix, Inc.*,
  (2009)...................................................................................................................... 3

*EQT Production Co. v. Adair*,
 764 F.3d 347 (4th Cir. 2014) .................................................................................... 8

*Fleming v. Charles Schwab Corp.*,
 878 F.3d 1146 (9th Cir. 2017) ................................................................................. 17

*Groshong v. Mutual of Enumclaw Ins. Co.*,
 329 Or. 303 (1999)................................................................................................... 3

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ................................................................................ 10

*In re Google Referrer Header Priv. Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) .................................................................. 17

*Jaunich v. State Farm Life Ins. Co.*,
No. 20-1567 (PAM/JFD), --- F. Supp. 3d ----, 2021 WL 5054461 (D. Minn. Nov. 1, 2021) ........ passim

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
571 F.3d 672 (7th Cir. 2009) .................................................................. 16

*Lech v. State Farm Life Ins. Co.*,
No. 8:19-CV-2983-T-35TGW, 2021 WL 1307610 (M.D. Fla. Feb. 23, 2021) .................................. 20

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*,
No. 3:18-CV-1921-SI, 2020 WL 1970812 (D. Or. Apr. 24, 2020) ........................................ 9, 10

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016) .................................................................. 20

*Page v. State Farm Life Ins. Co.*,
No. SA-20-CV-00617-FB, --- F. Supp. 3d ----, 2022 WL 406415 (W.D. Tex. Feb. 10, 2022) ..... passim

*Page v. State Farm Life Insurance Company*,
No. SA-20-CV-00617-FB, 2022 WL 718789 (W.D. Tex. Mar. 10, 2022) ............................ 5, 7, 20, 22

*Spegele v. USAA Life Ins. Co.*,
336 F.R.D. 537 (W.D. Tex. 2020) .................................................................. 24

*Totten v. New York Life Ins. Co.*,
298 Or. 765 (1985) .................................................................. 3

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .................................................................. 18

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016) .................................................................. 13

*Vogt v. State Farm Life Ins. Co.*,
963 F.3d 753 (8th Cir. 2020) .................................................................. passim

*Vogt v. State Farm Life Ins. Co.*,
No. 2:16-cv-04170-NKL, 2018 WL 4937069 (W.D. Mo. Oct. 11, 2018) .................................. 16

*Vogt v. State Farm Life Ins. Co.*,
No. 2:16-cv-04170-NKL, 2018 WL 4937330 .................................................................. 10

*Vogt v. State Farm Life Ins. Co.*,
No. 2:16-cv-04170-NKL, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018) .................................. 7, 8, 22

*Vogt v. State Farm Life Ins. Co.*,
141 S. Ct. 2551 (Apr. 19, 2021) .................................................................. 7

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..................................................................................................... 4, 5, 6

*Whitman v. State Farm Life Ins. Co.,*
    No. 3:19-cv-6025-BJR, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) .................................... passim

*Yearby v. Am. Nat'l Ins. Co.,*
    No. 20-CV-09222-EMC, 2021 WL 3855833 (N.D. Cal. Aug. 30, 2021) ............................................. 5

## INTRODUCTION

As Plaintiff anticipated in his opening motion, State Farm's opposition merely repeats the same arguments that courts considering class certification in parallel cases involving the same claims on State Farm's Form 94030 universal life insurance policy have unanimously rejected (and for which the Ninth Circuit has twice declined to take an interlocutory appeal). Notably, since the filing of Plaintiff's opening motion, yet another court has agreed that class certification of the same claims by Texas Form 94030 policy owners is appropriate and rejected the same challenges to Plaintiff's expert's damages methodology that State Farm makes here. *See Page v. State Farm Life Ins. Co.*, No. SA-20-CV-00617-FB, -- F. Supp. 3d --, 2022 WL 406415 (W.D. Tex. Feb. 10, 2022).[1] State Farm's opposition does not substantively address these courts' analyses; instead, it spends a mere page at the very end of its opposition to reach the conclusory assertion that all those courts must have simply failed to apply the required rigorous analysis in rejecting State Farm's challenges. State Farm does not even cite the Eighth Circuit opinion affirming class certification on the same record.

State Farm also does not explain why a different result would follow under Oregon law. Because under Oregon law the Policy will be interpreted the same way, one way or the other, for every class member, and State Farm performed the Policy the same way for all class members, whether State Farm breached the Policy as Plaintiff alleges is a common, predominating question, with a common answer as to every class member. State Farm's reliance on its *merits* contention that its reading of the Policy should prevail and that Plaintiff's interpretation is unreasonable (even

---

[1]     The *Page* case was previously captioned under the name "*Gonzalez*." *See* ECF 30 (Plaintiff's Motion for Class Certification ("Mot.")) at 2 n.2 (referencing *Gonzalez* case pending in the Western District of Texas).

though Plaintiff's interpretation has been found reasonable by three district courts, a magistrate judge, and the Eight Circuit) as a basis to *deny class certification*, is improper. This Court, like the many courts before it, should reject State Farm's "half-hearted attack"[2] on class certification and certify a class of Oregon Form 94030 policy owners.

## ARGUMENT

**I.        The requirements of Rule 23(a) are satisfied.**

**A.        Policy interpretation and breach are common questions because State Farm's standardized Policy means the same thing, and State Farm performed it the same way, for all class members.**

State Farm argues that commonality[3] is not satisfied on the basis that State Farm's proposed interpretations of the Policy's monthly COI Rates and Expense Charge provisions should prevail. Opposition ("Opp.") at 12-16. This is a nonsequitur. The Policy will mean the same thing, one way or the other, for every policy owner because all policy owners entered into the same standardized contract with State Farm. If State Farm's interpretation of the Policy were to prevail, that interpretation would apply to every class member. State Farm itself concedes that neither party's subjective understanding of what the Policy means is relevant to its interpretation. *Id.* at 16. And State Farm's further argument that extrinsic evidence of policy owners' interactions with their agents during the sales process is relevant to their *objective* manifestations of intent, and therefore, that its common form Policy could take on different meanings for different policy owners (*id.* at 16 n.7), is directly contrary to Oregon law.

---

[2]        *See Whitman v. State Farm Life Ins. Co.*, No. 3:19-cv-6025-BJR, 2021 WL 4264271, at *9 (W.D. Wash. Sept. 20, 2021).

[3]        State Farm does not contest predominance as to policy interpretation.

The Court's task under Oregon law "in determining the meaning of a policy is to ascertain the intent of the parties, . . . based on the wording of the policy itself[.]" *Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 241 (2008) (citing *Totten v. New York Life Ins. Co.*, 298 Or. 765, 770 (1985) and *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 307 (1999)). Determining the parties' "objective manifestations" of intent is determined from "the terms that they use." *Emps. Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 503 (2009). Conversely, "extrinsic evidence of the parties' intent is not part of the interpretation of an insurance policy under Oregon law." *Id.* at 505 (citing *Andres v. American Standard Ins. Co.*, 205 Or. App. 419, 424 (2006) (stating that the Oregon Supreme Court has been clear that "the interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself")).

State Farm does not cite any Oregon authority for its contention that individualized extrinsic evidence is admissible to interpret the Policy, relying instead on a case applying Washington law (that it has repeatedly relied on in other Form 94030 cases in its failed efforts to oppose class certification). Opp. at 16 n.7 (citing *Avritt v. Reliastar Life Ins. Co*, 615 F.3d 1023, 1030 n.4 (8th Cir. 2010)).[4] *Avritt's* discussion of what Washington law permits is irrelevant as to what Oregon permits, and further, the *Whitman* court—sitting in Washington and applying Washington law to Form 94030—called *Avritt's* discussion of Washington law "limited" and "conclude[d] that a more reasoned interpretation of Washington law is that extrinsic evidence of each individual sales pitch is not relevant to determine the parties' intent when entering a standard

---

[4]      *See, e.g.*, *Jaunich v. State Farm Life Ins. Co.*, No. 20-1567 (PAM/JFD), ECF 113 (State Farm's opposition to class certification relying on *Avritt*), at 3, 6-7, 21, 25, 31-33; *Jaunich*, -- F. Supp. 3d --, 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021) (certifying class); *Page v. State Farm Life Ins. Co.*, No. SA-20-CV-00617-FB, ECF 111, at 22 (State Farm's opposition to class certification relying on *Avritt*); *Page*, 2022 WL 406415 (recommending class be certified).

form, non-negotiated insurance policy." 2021 WL 4264271, at *7. The *Whitman* court also noted that there was "no indication that the contract in question [in *Avritt*] specifically prohibited sales agents from modifying the terms of the contract, as the instant Policy does." *Id.*

Thus, because the meaning of the Policy is determined by the language State Farm as the drafter chose to use, which is the same in each policy owner's Policy, whether State Farm's or Plaintiff's interpretation ultimately prevails, each class member's Policy will mean the same thing, *i.e.*, the *answer* to the question of policy interpretation will be common to all putative class members and will "drive the resolution of the litigation," satisfying commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

That the question of policy interpretation is a common one with a single class-wide answer is illustrated most starkly by the court's interpretations of Form 94030 in *Bally v. State Farm Life Insurance Company*. There, after previously ruling on summary judgment that plaintiff's interpretation of the COI Rates provision as prohibiting State Farm from including loads for unlisted profit and expense factors was reasonable, No. 18-cv-04954-CRB, 2019 WL 3891149 (N.D. Cal. Aug. 19, 2019), the court later adopted a novel interpretation of the provision that State Farm had not advanced, ruled that the plaintiff's interpretation was now unreasonable, and entered summary judgment *against the California class* on Count I. 536 F. Supp. 3d 495, 507 (N.D. Cal. 2021).[5] Then, the court granted partial summary judgment *in favor of the California class* as to Count II, concluding the Policy's monthly Expense Charge provision unambiguously prohibits State Farm from including expense loads in the Policy's COI Rates, a practice to which State Farm admits, 2022 WL 562714 (N.D. Cal. Feb. 24, 2022), and denied State Farm's motions to strike the

---

[5]     State Farm confusingly calls this *second* summary judgment order "*Bally I*" (Opp. at 14), neglecting to acknowledge that court's first order interpreting the Policy.

opinions of the plaintiff's expert, Scott Witt (the same expert here), and further denied State Farm's

motion to decertify the class. 2022 WL 594798 (N.D. Cal. Feb. 24, 2022).

Despite the *Bally* court's application of a single policy meaning to the entire California

class of over 82,000 members, State Farm inexplicably relies on one of the *Bally* court's *class-*

*wide* summary judgment rulings in support of its challenge to class certification here. Opp. at 14.

At the appropriate time, Plaintiff will explain why the *Bally* court's second interpretation of the

COI Rates provision should be rejected[6] and its interpretation of the monthly Expense Charge

provision adopted, but in any event, that the interpretations of both policy provisions applied to

the entire California class supports certification here; it does not refute it.

State Farm also mistakenly relies on the Supreme Court's *Wal-Mart Stores, Inc. v. Dukes*

opinion and again on the Eighth Circuit's *Avritt* opinion, for its contention that the Court must

determine whether Plaintiff's interpretation of the Policy is reasonable before certifying the Class

(Opp. at 12-13), but neither case supports State Farm's position. State Farm contends *Wal-Mart*

holds that an alleged uniform, companywide policy cannot support certification if the policy does

not say what the plaintiff claims. The alleged "policy" in *Wal-Mart*, however, was not a written

form contract that the defendant undisputedly administered the same for all class members. The

"policy" at issue in *Wal-Mart* was an alleged *unwritten* corporate policy of discriminating against

---

[6]     Two courts interpreting Form 94030 have since rejected the *Bally* court's interpretation of the COI Rates provision as the only reasonable way to read the Policy. *See Jaunich*, 2021 WL 5054461, at *2; *Page*, 2022 WL 718789, at *7-8 (W.D. Tex. Mar. 10, 2022). Further, another judge in the Northern District of California recently recognized in another COI case that "'sex, attained age, and rating class' are mortality factors" used to determine a "mortality rate," *see Yearby v. Am. Nat'l Ins. Co.*, No. 20-CV-09222-EMC, 2021 WL 3855833, at *16 (N.D. Cal. Aug. 30, 2021) (citing *Vogt*, 963 F.3d at 761), further showing the *Bally* court's contrary reading of the "applicable rate class" factor in Form 94030, which it relied on to grant State Farm summary judgment on Count I, is not the *only* reasonable understanding of that term.

female employees. The Supreme Court concluded there was no evidence that such a corporate policy of discrimination existed at all. 564 U.S. at 353. Instead, the only common "policy" was Wal-Mart giving discretion to lower-level managers, which meant there was no evidence that any particular employment decision, let alone all of them, was the result of discrimination. *Id.* at 354-56. The Court thus held that commonality had not been established, making certification of a (b)(2) class for declaratory and injunctive relief inappropriate. *Id.* at 359. Here, State Farm does not dispute that it has a uniform policy—its standardized written Form 94030 is the same for every class member. State Farm also does not dispute that it administers it uniformly as to every class member. State Farm priced Form 94030 the same way for all class members, including its determination of its pricing mortality rates and then its loading of those rates to determine its COI Rates. Thus, if Plaintiff's interpretation of the Policy prevails, that will establish State Farm breached every class member's Policy. Conversely, if State Farm's interpretation of the Policy prevails, that will defeat every class member's claim for breach. *Wal-Mart* bears no resemblance to the facts and claims here.

In *Avritt*, the Eighth Circuit construed Washington law as permitting consideration of extrinsic evidence to determine the meaning of the annuity policies at issue, and therefore concluded that individualized issues related to how the policies were explained to putative class members warranted denial of class certification. 615 F.3d at 1030. As explained above, *Avritt's* discussion of Washington law does not apply to Oregon (and was rejected by the *Whitman* court applying Washington law and was ignored as unpersuasive in other cases where raised by State Farm). In addition, the *Avritt* court's conclusion was primarily driven by the Eighth Circuit's view that the plaintiff's proffered interpretation of the annuities there was unreasonable, *see id.*, but the Eighth Circuit found plaintiff's interpretation of Form 94030 reasonable. *Vogt v. State Farm Life*

*Ins. Co.*, 963 F.3d 753, 763-64 (8th Cir. 2020) (concluding that "a person of ordinary intelligence purchasing an insurance policy would not read the [COI Rates] provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation").[7] Moreover, the Eighth Circuit affirmed certification of the Missouri class of Form 94030 policy owners and the United States Supreme Court denied State Farm's petition for *certiorari. Id.* at 765-68, *cert. denied*, 141 S. Ct. 2551 (Apr. 19, 2021). *Avritt* is thus likewise inapposite and does not support State Farm's contention that the meaning of its standardized Policy is not a common question with a common answer.

---

[7]     Other courts have agreed. *See Vogt*, No. 2:16-cv-04170-NKL, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018) ("Given the COI language in the Vogt policy and its context in the policy as a whole, the Court believes that no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance."); *Jaunich*, 2021 WL 5054461, at *2 (denying State Farm's motion for summary judgment, finding the plaintiff's interpretation reasonable and rejecting State Farm's argument that the *Bally* court's second, novel interpretation of the COI Rates provision refuted the reasonableness of the plaintiff's interpretation); *Bally*, 2019 WL 3891149, at *8 (first order interpreting the COI Rates provision on summary judgment and concluding plaintiff's interpretation that State Farm is not permitted to include unlisted factors in the COI Rates was reasonable); *Page*, 2022 WL 718789, at *5-11 (denying State Farm's motion for summary judgment, finding the plaintiff's interpretation reasonable, and stating she was "not persuaded" by the *Bally* court's second interpretation of the COI Rates provision); *Bally*, 2022 WL 562714, at *4 (granting partial summary judgment in favor of the class on Count II, "find[ing] that Bally's interpretation of the monthly expense charge is the only reasonable reading of the policy text"). State Farm attempts to cast doubt on the *Bally* court's order granting partial summary judgment in favor of the class on Count II (an argument going exclusively to the merits), contending it improperly recognized an "implied promise." Opp. at 34. The *Bally* court explicitly rejected this characterization of State Farm's obligation, finding the Policy *expressly* prohibits State Farm from deducting more than $5.00 for expenses in each Monthly Deduction. *Bally*, 2022 WL 562714, at *4 n.3 ("Bally is not attempting to read a term into the contract that does not appear in the contract's text. To the contrary, the reasonable interpretation of '[t]he monthly expense charge is $5.00' is that the monthly charge for expenses is five dollars.").

State Farm does not cite the Eighth Circuit's opinion in *Vogt*, let alone attempt to refute its persuasiveness here. Instead, State Farm mentions only the *Vogt* district court's certification decision in a single sentence on the last page of its opposition, concluding that court failed to "consider State Farm's argument that the at-issue Count I language does not refer to State Farm's ratemaking process." Opp. at 34. As explained above, it would have been error for the court to delve into that class-wide merits issue in determining whether the class certification requirements were satisfied, so State Farm's attempt to challenge the district court's certification order on this basis fails. Furthermore, the *Vogt* court, in its order denying State Farm's motion for summary judgment just two weeks before its class certification order, *did* consider State Farm's interpretation of the Policy, and rejected it. *Vogt*, 2018 WL 1747336, at *4; *see also id.* at *5 n.1 (explicitly rejecting State Farm's interpretation that the listed factors merely describe how State Farm would assign the COI Rates). Similarly, State Farm's cursory attempt to distinguish *Jaunich* on the same basis (Opp. at 34) should be rejected. *See Jaunich*, 2021 WL 5054461 (combined order denying State Farm's motion for summary judgment, including rejecting its interpretation of the Policy as the only reasonable one; denying State Farm's motion to exclude Witt; and granting the plaintiff's motion for class certification).[8]

State Farm also cites *EQT Production Co. v. Adair*, 764 F.3d 347, 360-63 (4th Cir. 2014), for the proposition that an identified common question must be answered in the plaintiffs' favor to support class certification. Opp. at 13. That case does not support State Farm's challenge to commonality here. There, if the at-issue question was *not* answered in the plaintiffs' favor, the answer would not have been the same for all class members. *See EQT Prod.*, 764 F.3d at 361 ("If

---

[8]     State Farm also does not even acknowledge the most recently certified Form 94030 class in the Ninth Circuit—*Whitman*.

*Harrison–Wyatt* does not support such a conclusion, the plaintiffs have no other argument as to how CBM ownership can be resolved on a classwide basis."). That is not the case here—if the Court interprets the Policy in State Farm's favor, that interpretation, like one in favor of Plaintiff, will apply to all class members.

State Farm's merits contention that it has offered the only reasonable interpretation of the Policy does not impact commonality, making those arguments improper in determining whether a class should be certified. *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812, at *2 (D. Or. Apr. 24, 2020) ("'Merits questions may be considered [only] to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

### B. Plaintiff satisfies typicality and adequacy.

State Farm's brief attack on Plaintiff Singh's typicality should also be rejected. State Farm argues that because Mr. Singh was not subject to COI overcharges in *every one* of his 26 policy years, that he is not typical of all class members. Opp. at 31. Mr. Witt has determined that Mr. Singh was subject to the allegedly unauthorized COI loads for the first 19 years he held his Form 94030, resulting in a total lost Account Value of $3,052.43. *See* ECF 31 (Witt Dec.), ¶¶ 66, 76. Mr. Singh asserts the same claims for COI overcharges as every member of the Class. State Farm fails to explain how Mr. Singh *not* being overcharged in a few years makes him atypical to assert the same claims for overcharges as every class member where he *was* overcharged for 19 years, resulting in his Account Value being reduced by more than half. *Compare id.*, ¶¶ 66, 76 (lost Account Value of $3,052.43) with *id.*, Ex. C, SINGH_SFLIC00212886 (annual statement for Plaintiff's Policy demonstrating an October 2020 Account Value of $2,430.61).

State Farm also does not contend that Mr. Singh is atypical in not being overcharged in later policy years. In fact, there is no dispute that State Farm's COI Rates contained higher loads relative to its mortality expectations in earlier policy years and lower non-mortality loads as a percentage of COI Rates in later policy years for *all* policy owners (even, in some cases, resulting in no load at all in later policy years), which courts have concluded is due to State Farm's "calculated business decision" to "recoup profits and expenses in the earlier years of the Policy and [to] refrain[] from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase." *Vogt*, 2018 WL 4937330, at *5; *Bally*, 335 F.R.D. 288, 300 (N.D. Cal. 2020) (same); *Page*, 2022 WL 406415, at *6 ("agree[ing] with [the *Vogt* and *Bally* courts'] assessment" on this point). Accordingly, Mr. Singh is typical of all class members in that he suffered the highest loads in earlier policy years. He was subject to the same uniformly determined COI Rates for which the non-mortality load decreased as a percentage of the COI Rate as the policy years elapsed. There can be little doubt, then, that Mr. Singh's claims are, at a minimum, "'reasonably co-extensive with those of absent class members'" to satisfy typicality. *McKenzie L. Firm*, 2020 WL 1970812, at *5 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).[9]

State Farm also asserts that Mr. Singh is atypical because he did not read his Policy or "seek input" (about what, State Farm does not say) during the time he held his Policy. Opp. at 31. However, State Farm does not contend Mr. Singh's claims are impacted in any way by whether he

---

[9]     State Farm contends it is Mr. Singh's substandard table rating that resulted in him not being overcharged in later policy years. Opp. at 31. Notably, the class representative in *Vogt*, who ably represented the Missouri class to a jury verdict in its favor and through appeal, also was given a substandard table rating by State Farm. Accordingly, receiving a substandard table rating like many Form 94030 policy owners demonstrably does not impact a class representative's typicality or adequacy.

read his Policy or sought general input about it, and so State Farm does not explain how its assertions make Mr. Singh "subject to unique defenses." *Id.*; *see Whitman*, 2021 WL 4264271, at *4 (rejecting State Farm's typicality challenge stating "[t]he Court finds it doubtful that Plaintiff is unique because he did not read the Policy before purchasing it").

As to adequacy, as explained below, State Farm merely repeats the same intra-class conflicts arguments that have been unanimously rejected by every court that has considered them, without even mentioning these courts' analyses as explained in detail in Plaintiff's opening motion. *See* Opp. at 31-32; Mot. at 20-28. State Farm's challenge to Plaintiff's adequacy should thus be rejected.

## II. State Farm's challenges to Rule 23(b)(3)'s predominance requirement fail.

### A. Mr. Witt calculates the damages resulting to every class member under Plaintiff's interpretation of the Policy.[10]

State Farm's primary challenges to predominance are the very same lack of "fit" and intra-class conflict arguments Plaintiff anticipated and refuted in his opening motion where he explained why every court that has considered these same challenges by State Farm has rejected them. *Compare* Mot. at 19-28 (anticipating and responding to State Farm's contentions that Mr. Witt's model is unreliable and creates intra-class conflicts because he uses State Farm's unloaded pricing mortality rates to calculate damages, which are "unpooled" (differentiated by policy year, or duration), "blended" for tobacco use, and at rare times higher than State Farm's actual COI Rates), *with* Opp. at 19-23 (asserting these same arguments without acknowledging other courts' treatment of these issues). State Farm's contention that the question of whether State Farm's mortality

---

[10]    The main thrust of State Farm's arguments against Witt's methodology are also set forth in its motion to exclude Witt's opinions. Therefore, Plaintiff also directs the Court to his opposition to that motion explaining why State Farm's challenges are without merit. *See* ECF 50 (Plaintiff's opposition to State Farm's motion to exclude Witt's methodology).

assumption for Form 94030 was unpooled and tobacco-blended does not have a common *answer* (Opp. at 21)[11] is simply false, as several courts have recognized (Mot. at 21-22, 25). State Farm used the same pricing mortality analysis for all class members. Similarly, State Farm's contention that because its COI Rates are pooled and tobacco distinct, Mr. Witt's use of unpooled and tobacco blended rates miscalculates damages (Opp. at 19), is also a common question with a common answer, because, once again, State Farm does not dispute that it used a uniform approach to determining policy owners' COI Rates.[12] State Farm's further contention that Mr. Witt's

---

[11]   State Farm's contention that the *Vogt* jury did not answer the common question of what rates reflected State Farm's mortality rates for the Policy (Opp. at 22) is directly contrary to multiple courts' conclusions otherwise, including the Eighth Circuit on appeal of the jury's verdict. Mot. at 21. Regardless, even if this Court ultimately concludes that State Farm is not collaterally estopped from presenting the same factual questions to the jury in this case, and the jury in this case answers the question differently from the *Vogt* jury, that answer would likewise apply to the entire Class because State Farm priced Form 94030 uniformly. Mot. at 21-22, 25.

[12]   While it is a class-wide merits determination that the Court does not need to reach at this stage, courts have repeatedly rejected State Farm's argument that "the Policy language required" State Farm to use pooled and tobacco distinct COI Rates (Opp. at 19). *See* Mot. at 23-24 (noting that the *Vogt*, *Bally*, and *Whitman* courts had concluded the COI Rates provision's reference to "policy year" indicated that policy duration was a factor affecting the rates); *Page*, 2022 WL 406415, at *5 (rejecting State Farm's contention that Mr. Witt's model is unreliable because it uses unpooled rates, stating "the Policy itself references 'policy year' in describing the 'Monthly Cost of Insurance Rates'"); *Vogt*, 963 F.3d at 769 ("[T]here was no need for the damages models to take [tobacco use] into account as this was not a mortality factor listed in the policy."); *Bally*, 335 F.R.D. at 299 ("Just as in *Vogt*, the blended rates that Witt used reflect the terms of Form 94030, and his use of those rates comports with plaintiff's damages theory of COI Charges beyond the terms of the Policy."); *Page*, 2022 WL 406415, at *5 ("Per the Policy, 'rate class' is defined solely as 'the underwriting class of the person insured,' without any reference to tobacco usage."); *Whitman*, 2021 WL 4264271, at * 10 ("With respect to the model's use of blended tobacco usage rates . . . the *Vogt* and *Bally* Courts concluded that doing so comports with the terms of the Policy and plaintiffs' damages theory . . . This Court also concludes that the model's use of blended tobacco rates does not disqualify it from Plaintiff's damages theory."). State Farm's contention that "tobacco usage is disclosed as a factor in the Insured's rate class at the very beginning of the Policy," pointing to Mr. Singh's Policy where it identifies him as "Table 6 Rate Class-Male Non-Tobacco," is incorrect. Opp. at 20. Mr. Singh's "Rate Class" is identified as "Table 6"—a substandard rating. It also says he is "Male," which is a separate mortality factor (sex) identified in the COI Rates provision from applicable rate class. Mr. Singh being identified as "Non-

---

methodology does not consider differences among class members related to their age, sex, and rate class is incorrect. Opp. at 19. Mr. Witt uses State Farm's pricing mortality rates to calculate damages and State Farm determined these mortality rates considering insureds' age, sex, and rate class. *See* Mot. at 6; ECF 31 (Witt Dec.), ¶¶ 37, 73 n.21. State Farm thus cannot point to a single issue related to the calculation of damages that any class member would need to litigate individually. State Farm's conclusory assertions otherwise should be rejected. *See* Opp. at 19-20.

State Farm also challenges Mr. Witt's method for calculating damages under Count II, but like its challenges to the Count I methodology, State Farm does not actually contest that Mr. Witt's methodology is capable of providing, and actually does provide, a class-wide measure of damages under Plaintiff's proposed interpretation of the Policy. Instead, State Farm argues that Mr. Witt's methodology does not fit "a *permissible* interpretation of the Policy." Opp. at 23 (emphasis added). But the *permissible* interpretation of the Policy is the key merits issue in the case. Thus, for example, State Farm's arguments challenging whether the expense load in COI Rates should be viewed from the policyholder's perspective or as expenses to State Farm are class-wide merits questions that the Court will resolve, but they do not impact the class certification requirements.[13]

---

Tobacco" after the identification of his sex does not make tobacco use part of the applicable rate class factor pursuant to the Policy, and nothing else in the Policy does so either.

[13]     State Farm relies on the *Bally* court's recent conclusion that the damages for Count II must be determined from the portion of the non-mortality load that was attributed to State Farm's expense recovery, as opposed to from the entire non-mortality load where expenses are viewed from the perspective of the policy owner. Opp. at 24. But the *Bally* court has already reached the merits of policy interpretation, so it was operating from a different procedural posture than this Court. Notably, the *Bally* court rejected State Farm's challenges to Witt's alternative methodology for calculating Count II damages, *Bally*, 2022 WL 594798, at *4 (N.D. Cal. Feb. 24, 2022), a point State Farm does not acknowledge until page 34 of its opposition, concluding simply that the court must not have engaged in a rigorous analysis.

Instead, this Court need only conclude that Mr. Witt is calculating the damages "stemm[ing] from [State Farm's] actions," even if "imperfect[ly]," to reject State Farm's challenges to class certification. *See Bally*, 2022 WL 594798, at *5 (quoting *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)); *see also Page*, 2022 WL 406415, at *6 (rejecting State Farm's challenges to Mr. Witt's primary Count II model, stating "Witt's report explains that he views the damages methodology for Counts I and II as the same; regardless of the contractual provision in the Policy at issue, Page believes any amount in excess of the policy-based COI deductions constitutes a breach of contract, entitling the policyholder to damages."). Similarly, State Farm's contention that Mr. Witt is including certain items as expenses that State Farm contends should not be considered expenses (Opp. at 24) is likewise a class-wide dispute. State Farm's challenges to class certification on these bases thus put the cart before the horse.

State Farm further incorrectly contends Mr. Witt is engaging in impermissible "averaging" of damages or rates to calculate the non-mortality load in each COI Charge. *Id.* at 24-26. To the contrary, Mr. Witt relies on *each* policy owner's actual policy transactional data held by State Farm and State Farm's pricing materials setting forth its mortality expectations for insureds based on their specific age, sex, and rate class to determine each policy owner's non-mortality load in each COI Charge. Mr. Witt calculates the lost Account Value suffered by *each* policy owner resulting from State Farm's use of the loaded COI Rates instead of the pricing mortality rates. Mr. Witt is thus decidedly not "averaging" damages or rates.

State Farm further contends that it is Mr. Witt's purported "averag[ing]" of "rates" that results in the pricing mortality rates at rare times being higher in later policy years than State Farm's actual COI Rates. Opp. at 25-26. This makes no sense. As explained above, Mr. Witt is not averaging any rates. He uses State Farm's pricing mortality rates, which are specific to each

insured's age, sex, and rate class, to calculate damages. Contrary to State Farm's contention that higher pricing mortality rates "is only possible" because "Witt's model masks significant differences among class members," *id.*—as Plaintiff explained in his opening motion, the reason State Farm's pricing mortality rates are at rare times higher than its COI Rates is the result of "a calculated business decision," not a flaw in Mr. Witt's methodology. *See* Part I.B., *supra*. State Farm does not even attempt to refute the analysis of the courts that have so concluded.

For Mr. Witt's alternative Count II calculation, Mr. Witt uses the same pricing mortality rates and segments the added non-mortality load between profits and expenses, and then likewise calculates the lost Account Value suffered by each policy owner caused by State Farm's inclusion of expense loads. Once again, by using State Farm's pricing mortality rates specific to each insured's age, sex, and rate class, Mr. Witt is not averaging any rates for his calculation. State Farm did not document the specific amount of expenses factored into each COI Rate. Instead, State Farm identified profits above expense recovery using an aggregate pricing model, which Mr. Witt likewise uses to determine the expense load in each COI Charge. Mr. Witt cannot be faulted for relying on State Farm's *own* pricing model for determining the expense loads to quantify the damages from State Farm's allegedly improper loading of expenses in COI Charges. To the extent there is any imprecision in determining the amount of expenses in each COI Charge it is a result of State Farm's own conduct. *Bally*, 2022 WL 594798, at *1 ("[T]o calculate the components of the cost of insurance rate related to expense recovery, Witt used the testimony of State Farm's witnesses to identify certain asset share workbooks that provided the '*best available data*' that could be used to identify the different components of the cost of insurance rate." (emphasis added)). Mr. Witt's method of calculating each class member's damages would be the same if any one of them were proceeding as the only plaintiff; Mr. Witt in fact calculates each class member's

individual damages and simply adds them to arrive at the class-wide damages. Notably, after Plaintiff filed his opening motion in this case, the *Bally* court rejected State Farm's challenges to Mr. Witt's alternative Count II model and denied State Farm's motion to decertify the California class, concluding Mr. Witt's alternative methodology was reliable and fit the plaintiff's Count II theory of liability. *Bally*, 2022 WL 594798, at *4 ("In contrast to the model offered in *Comcast*, Witt's supplemental model is tailored to the Count II theory. The supplemental model calculates the extent to which State Farm deducted costs for expenses through the cost of insurance rate in breach of the policy's promise that '[t]he monthly expense charge is $5.00.'").

**B.    Every class member has standing to sue.**

State Farm's final contention that if its challenges to Mr. Witt's calculations prevail, there are class members without standing under Mr. Witt's methodology (Opp. at 28-30), reflects a profound misunderstanding of the difference between a dispute going to the merits of a plaintiff's damages claim and one depriving a federal court of subject matter jurisdiction to adjudicate a dispute. A plaintiff's or class member's standing does not hinge on whether they will ultimately prevail on their damages claim on the merits, let alone on the defendant's assertion that they will not ultimately prevail on the merits. If that were the rule, a federal court would never have jurisdiction in a contested case, class action or otherwise. State Farm made the same argument to the Eighth Circuit in *Vogt* where, after the jury accepted State Farm's offset defense, leaving 29 class members without net damages (*see* Mot. at 26), State Farm argued "that class certification was inappropriate because the class included members who did not suffer damages and thus do not have standing." *Vogt*, 963 F.3d at 766. The court rejected that argument, finding that "a failure on the merits does not affect a class member's individual standing." *Id.* at 766-67 (citing 1 Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedures, Rules and Commentary, Rule 23 (2020) ("[If] it turns out that some members of the class are not entitled to relief, that

represents a failure on the merits, not the lack of a justiciable claim.")); *see also Vogt*, 2018 WL 4937069, at *2 (W.D. Mo. Oct. 11, 2018) ("Even if damages cannot ultimately be proved that does not mean that there was no standing to sue."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (rejecting the defendant's argument that "if a plaintiff loses his case, this shows that he had no standing to sue and therefore can start over," calling this "an absurd result").

Plaintiff asserts that State Farm breached its contract with every member of the Class. Whether or not every member of the Class is ultimately determined to have suffered damages as a result does not affect whether they had standing to sue in the first place. *See Vogt*, 963 F.3d at 766 ("[A] party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged."); *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (explaining plaintiffs' potential inability to prove damages in a breach of contract case does not negate standing); *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1011 (N.D. Cal. 2020) ("An individual to whom a contractual duty is owed may, therefore, allege a concrete legal injury by virtue of the duty's breach, apart from any actual damages stemming from that breach.").[14]

For example, State Farm contends class members who selected Death Benefit Option 1 and who were paid a death benefit do not have Article III standing. Opp. at 29-30. First, as Plaintiff

---

[14] Contrary to State Farm's contention that Plaintiff relies solely on Mr. Witt's calculations to establish breach (*e.g.*, Opp. at 9), State Farm admits to the very conduct Plaintiff alleges breaches the Policy—the inclusion of profit and expense loads in the Policy's COI Rates. That is why at the dispositive motions phase of parallel cases, courts have granted summary judgment in favor of Form 94030 classes for State Farm's breach of contract upon interpreting the Policy in the class's favor. *See Vogt*, ECF 335 ("The Court has [] ruled that State Farm was not permitted to take non-mortality factors, including expenses, into account in setting monthly COI rates…State Farm has admitted it did so.); *Bally*, 2022 WL 562714 (N.D. Cal. Feb. 24, 2022). Plaintiff does not rely on Mr. Witt's calculations to establish breach, only the damages resulting therefrom.

explained in his opening motion, the Eighth Circuit rejected State Farm's argument that these class members—who undisputedly had loaded COI Charges deducted from their Account Values during their lives—were not damaged. Mot. at 28. Second, as explained above, even if this Court concluded these class members' damages claims fail, that would, once again, be a failure on the merits, not a failure of Article III standing. Third, these class members are an identifiable group, and thus, if this Court concluded they were not damaged, they would not be awarded damages. *See* ECF 31 (Witt Dec.), ¶ 75 n.23 (identifying from State Farm's records Death Benefit Option 1 policy owners who were paid a death benefit); *see also Bally*, 335 F.R.D. at 300 (rejecting argument that Death Benefit Option 1 policy owners who were paid a death benefit were not damaged, but stating "that even if these particular Class members (who make up a small fraction of the Class) suffered no damages, that does not meaningfully impact the reliability of Witt's model; rather, it would simply support a finding of no damages for those particular policies").

More broadly, where Mr. Witt has calculated damages specific to each class member using their own policy's transactional history, there is no chance that any class member found to have no damages because any other challenge by State Farm prevails will be awarded damages. *Whitman*, 2021 WL 4264271, at *10-11 (concluding there is no "concern" that Mr. Witt's methodology will "mask[] the existence of class members who suffered no injury [where] Plaintiff's expert has calculated damages for each putative class member using State Farm's transactional data specific to each class member's policy, and, moreover, identifies positive damages suffered by each class member"); *cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 462-66 (2016) (Roberts, C.J., concurring) (concurring in affirmance of certification of a class when it was "undisputed that hundreds of class members suffered no injury," stating that the relevant question is: "which ones?" such that there is "a means of distributing the aggregate award only to

injured class members"). Thus, State Farm's conclusory assertion that this issue defeats predominance should be rejected.

### C. Common questions predominate Plaintiff's conversion claim.

State Farm's challenges to predominance as to Plaintiff's conversion claim principally rely on class-wide merits challenges to that claim or the same challenges it makes to Plaintiff's other claims. Opp. at 30. State Farm's only challenge even going to the class certification requirements relies on its speculation that some unidentified class members may have "willingly paid" their excessive COI Charges. *Id.* at 30-31. To the contrary, as numerous courts have recognized, there is simply no evidence that any policy owner was aware of the undisclosed excessive deductions. And policy owners do need even "pay" their COI Charges—State Farm deducts them without disclosing the COI Rates used to calculate them or the factors State Farm considered in determining them. *See Page*, 2022 WL 406415, at *11 ("Policy owners like Page pay their premiums, not the COI and expense charges. These amounts are deducted from the premiums by State Farm on a monthly basis per the Policy. This is the practice as to every single class member."). Thus, there are no individualized issues related to State Farm's consent defense. *See id.* ("State Farm does not direct the Court to any actual evidence of consent."); *see also Vogt*, ECF 336 (granting summary judgment in favor of the class on State Farm's "consent-related defense" because "policyholders could not have known that State Farm considered non-mortality factors in setting COI rates, [so] they could not have consented to the taking of funds for COI rates to the extent that those rates were based on non-mortality factors").[15] The Court should thus grant class

---

[15] For the same reasons, there are no predominating individualized issues related to State Farm's asserted "waiver, ratification, and voluntary payment defenses." *See* Opp. at 16. State Farm relies on *Cruson v. Jackson National Life Insurance Co.*, 954 F.3d 240, 256-57 (5th Cir. 2020) for the point that certification of a class is improper "where [the] district court fail[s] to consider

certification as to Plaintiff's conversion claim and resolve State Farm's class-wide merits challenges thereafter.

### D. Common questions predominate State Farm's statute of limitations defense.

State Farm argues that individualized issues will predominate on the statute of limitations by pointing to exclusively *common* issues. First, State Farm points out that there is no discovery rule for the breach of contract claims, Opp. at 27, but State Farm does not contend that some class members will be entitled to rely on the discovery rule and others will not, and thus, this is a common issue. Second, State Farm contends that whether the accrual of class members' breach of contract claims is tolled because of State Farm's fraudulent concealment is not a common predominating question while conceding that fraudulent concealment tolling will be determined based on *State Farm's* affirmative conduct. *Nitsch*, 315 F.R.D. at 310 ("[C]oncealment will turn primarily on common proof regarding Defendants' actions, rather than proof regarding individual class members."). State Farm then delves into whether it engaged in such affirmative conduct (the merits),[16] but does not suggest there is any basis to conclude that some class members will be able

---

whether [the] insurer's waiver and ratification defenses defeated predominance." Opp. at 17. But Plaintiff is not suggesting this Court "fail to consider whether" State Farm's asserted defenses defeat predominance. Rather, the Court should consider, and reject, State Farm's argument that its defenses defeat predominance because State Farm has provided no evidence that it could prevail on these defenses as to any class members. Even if State Farm *had* come forward with evidence that some identified class members were aware of and consented to its conduct, such limited inquiries likewise would not defeat the common, predominating questions presented here. *See Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 312 (N.D. Cal. 2016) (rejecting argument that predominance was defeated because there was "limited individualized evidence [that] may warrant inquiries as to whether particular class members had constructive or actual knowledge").

[16]     There is substantial undisputed evidence that State Farm engaged in such affirmative acts. In the Policy itself "State Farm claimed that it was using only certain factors to calculate COI, while State Farm was in fact using other factors as well, and State Farm kept this information from policyholders who continued to pay higher COI rates than they should have paid." *Jaunich*, 2021 WL 5054461, at *3; *see also Lech v. State Farm Life Ins. Co.*, No. 8:19-CV-2983-T-35TGW, 2021

to prove State Farm engaged in affirmative conduct but others will not. Further, State Farm acknowledges that Oregon recognizes the discovery rule for conversion claims and presents the same argument here that has been repeatedly rejected by every court to consider it—that some policy owners may have known State Farm was loading its COI Rates. *See* Mot. at 31; *see also Page*, 2022 WL 406415, at *14 ("State Farm's arguments regarding its limitations defense have been repeatedly rejected by the other courts faced with the decision of whether or not to certify a class of policyowners who purchased policies issued on Form 94030.").[17]

State Farm provides the declaration of a sales agent, Kerry Williams, who asserts that it was common for sales agents to tell prospective policy owners that State Farm used the insured's age, sex, and rate class to "assign" a cost of insurance rate to them. Williams Decl. ¶ 20. However, as will be explained further at the dispositive motions stage, such an understanding is not inconsistent with Plaintiff's interpretation that the COI Rates must be determined from the disclosed mortality factors—and would necessarily be assigned according to those factors. The

---

WL 1307610, at *3 (M.D. Fla. Feb. 23, 2021) (finding plaintiff plausibly alleged State Farm "fraudulently concealed the true computation of the COI Rates by its explicit misrepresentation in the Subject Policies that the COI Rates were calculated 'based on the Insured's age on the policy anniversary, sex, and applicable rate class.'"). Second, "State Farm's illustrations provided to policyholders refer to COI charges as 'mortality charges,'" *Page*, 2022 WL 718789, at *14, suppressing the fact that the COI Charges include non-mortality loads. Third, State Farm issued annual statements reflecting the deductions it had made from class members' Account Values without disclosing the non-mortality factors it relied on to increase the deductions. *See* ECF 31 (Witt Dec.), Ex. C.

[17] Courts that have addressed State Farm's statute of limitations defense on the merits have granted summary judgment in favor of the class. *See Vogt*, ECF 335 (granting summary judgment in favor of class on State Farm's statute of limitations defense), *aff'd*, 963 F.3d at 765 ("Although, with the help of an attorney and an actuarial expert, Vogt was ultimately able to determine that the COI fees included non-enumerated factors, there is no evidence in the record that would have placed a reasonably prudent person on notice of a potentially actionable injury simply based on the rising COI fees and annual statements.") (quotations omitted); *Bally*, 536 F. Supp. 3d at 515-16 (same).

relevant policy interpretation question is whether the COI Rates provision authorizes State Farm to *include loads* in its COI Rates for undisclosed non-mortality profit and expense factors, thus increasing those rates and resulting in larger COI Charges deducted from policy owners' Account Values each month. Thus, even if some policy owners understood they would be *assigned* the same set of rates as other policy owners of the same age, sex, and applicable rate class as Mr. Williams suggests, that would not put them on notice of that State Farm was *inflating* those COI Rates with undisclosed loads.[18] *See Whitman*, 2021 WL 4264271, at *7 (finding similar agent declarations inapposite or actually supportive of the plaintiff's interpretation).

State Farm also contends Mr. Singh testified that he understood that "State Farm charges a price in excess of its cost so that it can make a profit," purportedly to suggest Mr. Singh was on notice of his claims. Opp. at 16 n.6. But as numerous courts have recognized, an understanding that State Farm would make a profit off the Policy generally does not mean policy owners understood State Farm would earn a profit through the COI. *See Vogt*, 2018 WL 1747336, at *4 ("While an insurance company would be expected to make a profit, the terms of the insurance

---

[18]     Plaintiff will also explain at the summary judgment stage why State Farm's "assigned-by" interpretation of the Policy is not supported by the Policy text. State Farm's opposition concedes that "based on" does not mean the same thing as "assigned by" and that therefore "assigned" must be written into the Policy for it to take on that meaning. *See, e.g.*, Opp. at 7 ("During the sales process, agents explained to potential policyholders (often using illustrations, diagrams, and brochures) that their cost of insurance rates would be *assigned* from pre-existing rate schedules, after the Insured went through underwriting, *based on* that person's (1) age on each anniversary of the Policy, (2) sex, and (3) rate class.") (emphasis added); *see* Williams Dec., ¶ 23 ("I am aware of other Agents in the Pacific Northwest, including Oregon, who spoke with potential policyholders about how their rates were *assigned based on* their individual characteristics.") (emphasis added); *id.* ¶ 38 ("I marketed Universal Life policies to prospective policyholders consistent with the understanding that policyholders were *assigned* a cost of insurance rate *based on* the insured's individual age, sex and rate class.") (emphasis added); *see also Page*, 2022 WL 718789, at *7 ("For the COI charge provision to be so limited by its text, there would need to be additional language referencing rate assignment. But no such language appears in the contract. Yet State Farm repeatedly inserts the word 'assign' when describing the Policy language to advance its contractual interpretation throughout its briefing.").

policy at issue are so dense, a lay person would not understand that State Farm expected to derive profit from the COI."); *Bally*, 2019 WL 3891149, at *7 ("Given [the Policy's] other expenses, most notably the 5% premium deduction, it would not be unreasonable for a policyholder to conclude that State Farm was making a profit from the Policy without necessarily concluding that it was also doing so from the COI calculation."); *Whitman*, 2021 WL 4264271, at *7 ("[W]hile [a State Farm agent] states that 'policyholders understand that there are administrative costs inherent in the cost of the *policy*,' she does not state that the policyholders understood that those administrative costs were included in the *COI rate* calculation.") (emphasis in original); *see also Whitman*, 2021 WL 4264271, at *4 ("The Court finds it doubtful that Plaintiff is unique because . . . he assumed that State Farm would profit from the Policy.").[19] Thus, State Farm's mere speculations that some policy owners may have been on notice of the basis for their claims does not defeat predominance.

## III. Rule 23(b)(2) is satisfied.

State Farm's challenges to Plaintiff's request for certification of his claim for declaratory judgment and request for injunctive relief under Rule 23(b)(2) (Opp. at 32-33) should also be rejected. First, State Farm incorporates its challenges to commonality and class member standing, which, as explained above, fail. Second, State Farm contends that a (b)(2) class is not permissible

---

[19]     Similarly, State Farm relies on Mr. Singh's deposition testimony for the point that he understood "State Farm is authorized to deduct 5% from each premium he paid and deduct $5 from the account value each month, and that the Policy describes neither how State Farm sets the monthly $5 amount nor what expenses it covers." Opp. at 15 n.5. But there is no dispute State Farm is authorized to deduct 5% from each premium payment and $5 from the Account Value each month for expenses. The issue is whether State Farm is permitted to deduct *more than $5 per month from the Account Value for expenses*. State Farm does not dispute that it deducts $5 per month for the Expense Charge and also *additional undisclosed expenses through the COI Charge*. Plaintiff alleges this breaches the Policy's monthly Expense Charge provision. State Farm provides no evidence Mr. Singh or any other policy owner was on notice of this conduct.

because Plaintiff's request for damages is not incidental to his requested declaratory and injunctive relief. But Plaintiff does not request that his damages claims be certified under (b)(2), only his declaratory judgment claim and request for an injunction, so this argument fails as well. *See Page*, 2022 WL 406415, at \*15 (rejecting same argument, stating plaintiff "does not seek to certify any claim for monetary relief under Rule 23(b)(2). Thus, there is no basis for concern that he is attempting to shoehorn a damages actions into the Rule 23(b)(2) framework") (quotations and brackets omitted).

Finally, State Farm relies on the same intra-class conflicts arguments repeatedly rejected by every court to consider them to argue that some class members would be harmed if State Farm were required to comply with the Policy under Plaintiff's interpretation. The Court should reject State Farm's intra-class conflict arguments for the reasons explained in Plaintiff's opening motion. Moreover, no policy owner could be harmed by an injunction requiring State Farm to remove non-mortality loads from their COI Rates. *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 553 (W.D. Tex. 2020) (considering same argument in similar case, concluding "any favorable injunctive relief will only require Defendant to stop charging improperly 'inflated' COI Charges").

## CONCLUSION

Because all of the required elements of Rule 23 are satisfied, Plaintiff's motion for class certification should be granted, and Plaintiff Singh should be appointed as the Class Representative and his counsel appointed as Class Counsel.

Dated: April 8, 2022                    Respectfully Submitted,

**SUGERMAN DAHAB**

*/s/* Nadia H. Dahab

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
707 SW Washington St. Ste. 600
Portland, OR 97205
Tel: 503-228-6474
Fax: 503-228-2556
david@sugermandahab.com
nadia@sugermandahab.com

Norman E. Siegel (*pro hac vice*)
Lindsay Todd Perkins (*pro hac vice*)
Ethan M. Lange (*pro hac vice*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101
siegel@stuevesiegel.com
perkins@stuevesiegel.com
lange@stuevesiegel.com

John J. Schirger (*pro hac vice*)
Matthew W. Lytle (*pro hac vice*)
Joseph M. Feierabend (*pro hac vice*)
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

**Attorneys for Plaintiff and the Putative Class**